# McCutchen v. Loggins.

*Bill in Equity Contesting Probate of Will.*

1. *Contesting will in equity; grounds of contest when complainant claims only under an alleged subsequent will.*—Where the complainants in a bill in equity contesting the probate of a will are not beneficiaries under the probated will, nor heirs in case the testator had died intestate, but they claim only as beneficiaries under an alleged later will, so far as the bill seeks to contest the probated will on the grounds that it was procured by fraud or undue influence, or that it was not legally executed or published, it is without equity; and evidence to impeach the validity of the probated will can not aid the

contestants, unless offered in connection with evidence sufficient to establish the will under which they claim.

2. *Same; right to open and close argument.*—Where the probate of a will is contested by bill in equity, which shows the revocation of the probated will, and the interest of the complainants as devisees and distributees under an alleged subsequent will, the burden is placed upon the defendants to affirm and maintain the validity of the probated will; and, on the trial of the issue before the jury, the complainants are not not entitled to open and close the argument.

3. *Communications between presiding judge and jury; when not ground for new trial.*—The presiding judge, after the case had been submitted to the jury, in response to the request of a juror to speak to him, went to the door of the jury room, and, on the juror stating that the jury had agreed on a verdict, but he desired to ask a question in reference to it, informed the juror that he could not and would not hear a word from him about the case, except in the presence of the other jurors and counsel for both sides, whereupon the juror said he only wanted to know if it was necessary for all the jurors to sign the verdict, to which the judge answered in the negative. *Held,* that such conduct would not justify a new trial.

4. *Contest of will by bill in equity; when complainant is without interest in decree establishing another will.*—Where the probate of a will is contested by bill in equity by persons whose interest depends upon the establishment of a second instrument as the last will and testament of the deceased, the complainants can not be heard to complain that a verdict of the jury finding a third instrument to be the last will and testament of the deceased does not authorize the rendition of any decree, as the verdict was adverse to them upon the issue as to the validity of the instrument under which they claimed.

5. *Question calling for the conclusion of a witness as to his competency as an expert.*—It is not error to sustain an objection to a question to a witness proposed to be examined as an expert, calling upon him to state whether he has had sufficient skill and experience to give an opinion.

6. *Impeachment of witness; competency of evidence.*—It is not proper to permit a witness to be asked, for the purpose of impeaching the testimony of another witness, as to the latter's reputation for "honesty and integrity," and whether he was not a "common thief."

7. *Objection to question calling for both competent and incompetent testimony.*—It is not error to sustain an objection to a question so framed as to elicit both competent and incompetent testimony.

8. *Competency of testimony that a person "seemed hurt" at the conduct of another.*—On the contest of the probate of a will of a deceased married woman, under which her husband was a beneficiary, testimony of a witness that the deceased "seemed hurt at the conduct of her husband," and "seemed to wish her property to go to her brother and his children," is incompetent and irrelevant.

9. *Mistake in name of witness in commission for oral examination;*

*when not ground for suppressing deposition.*—The ruling of the chancellor in overruling complainant's motion to suppress the deposition of a witness for the defendant who was examined orally, on the ground that in the application for his oral examination the name of the witness was stated to be James H. Wilson, when his true name was simply James Wilson, will not be disturbed on appeal, when it appears that notice of the time and place of the examination was given; that counsel for both parties were present, and that complainant's counsel cross-examined the witness, after objecting to the examination when the witness stated his true name; and it does not appear that the complainant was misled by the mistake in the name of the witness.

10. *Abstract charges, and charges singling out, and giving undue prominence to, certain parts of the evidence; when the giving of, is not ground of reversal.*—The giving by the trial court to the jury of abstract charges, or charges singling out, and giving undue prominence to, certain parts of the evidence, is not ground for reversal, unless injury be shown.

APPEAL from the City Court of Decatur.

Heard before the Hon. WM. H. SIMPSON.

The bill in this case was filed by the appellants, Estes D. L. McCutchen and others, against the appellees, William J. Loggins and others. The nature of the case and the principal facts are stated in the opinion. On the trial of the issue submitted to the jury, the complainants duly reserved exceptions to the several rulings, among others, which are indicated and discussed in the opinion. The facts as to the presiding judge entering the jury room, while the jury were deliberating, are stated in the bill of exceptions as follows: "The court commenced charging the jury at about two o'clock P. M., and they returned a verdict about eleven o'clock that night. While the jury were deliberating upon their verdict, the presiding judge entered the room where they were deliberating two or three times. under the following circumstances: For convenience the jury remained during their deliberation in the court room, where the trial was had. About seven o'clock, the presiding judge entered the court room, with the consent of counsel for both parties, to ascertain if the jury had agreed on a verdict, with the view of having the bailiff order supper for them if they had not agreed. They had not agreed, and were sent to supper in a body, in charge of the bailiff. About ten o'clock, the judge, with the express consent of counsel for both parties,

again entered the room to ascertain if there was a probability of the jury agreeing in a reasonable time, with the view or entering a mistrial, and discharging them, if there was no such probability. This intention of discharging them at this time if there was no probability of their agreeing was not expressed to the jury. One of the jurors stated, in answer to the judge's inquiry, that he thought that they would soon agree on a verdict, and the judge immediately retired. About eleven o'clock the judge was informed by the bailiff in charge that one of the jurors was at the door of the court room, and desired to speak to him. The judge went to the door, and immediately inside the court room. The juror said they had about agreed on a verdict in favor of the third will, but he desired to ask a question in reference to it. The judge informed him that he could not and would not hear a word from him about the case, except in the presence of the other jurors and counsel for both sides, whereupon the juror said he only wanted to know if it was necessary for all the jurors to sign the verdict, to which the judge answered in the negative, and retired. Not a word was said about the case at either visit of the judge to the jury room, either by a juror or the judge, except as above stated." One of the grounds of complainant's motion for a new trial was that "the presiding judge, at the request of a juror, entered the jury room while they were deliberating on their verdict." The verdict of the jury was: "We, the jurors, find the issues in favor of the defendant W. J. Loggins, and we further find that the will of date June 21, 1888, witnessed by J. B. Turney and W. R. Wilson, was the true last will and testament of Malinda Loggins, deceased." A decree was rendered dismissing the bill, and form this decree the present appeal is prosecuted.

E. W. GODBEY, for the appellants, submitted an elaborate printed argument, in which he discussed the various questions presented by the assignment of errors, and cited many authorities; but no brief of his propositions and authorities, if any was filed, has come to the hands of the Reporter.

SPEAKE & RUSSELL, contra.

COLEMAN, J.—On the 11th day of December, 1890, William J. Loggins, the respondent, probated an instrument bearing date of February, 1876, as the last will and testament of Malinda Loggins, his deceased wife. The complainants did not contest the probate of the will, and under section 2000 of the Code of 1886, filed the present bill in chancery to contest the validity of the same. Complainants took nothing under the probated will, and would have taken nothing had deceased died intestate, they being the children of a living brother of testatrix. Complainants' rights, as shown in the bill, depend upon the establishing of a subsequent will of testatrix, bearing date of February, 1888, in which they are devisees, and which, if valid as a last will and testament, revokes the will probated by Loggins. Upon the application of the respondent Loggins, the chancery court directed that an issue he made up and tried by a jury, which was done.

So far as complainants sought to contest the probated will on the grounds that the same was procured by fraud or undue influence, or that the same was not legally executed and published, they not being beneficiaries under the will, nor heirs in case testatrix had died intestate, the bill is without equity; and evidence to impeach the validity of the probated will could not aid the contestants, unless offered in connection with evidence sufficient to establish the will under which they claim. We are of opinion, however, that the evidence is without serious conflict that the will probated, when executed and attested, was, and was intended at that time to operate as, a last will and testament.

The issue tendered by the respondents, in effect, set up the will which had been probated, as the last will and testament of Malinda Loggins, duly executed and published as such, with the probate thereof. The answer of complainants to the issue tendered set up the instrument of February, 1888, made exhibit "A" to the bill, and averred to be the last will and testament of Malinda Loggins, revoking all previous wills. To this answer the respondents replied, denying that Malinda Loggins ever executed any such instrument as that set up in the answer, and, by way of further replication, averred that in June, 1888, subsequent to the date of the will shown by exhibit "A" to complainants' bill, Malinda Loggins

executed another will, in which she revoked all previous wills, except her first will, the one probated, and that by this last will she reaffirmed the first will, and disposed of her property in the same manner. These were the issues presented to the jury for determination. The jury found the issue in favor of William J. Loggins, and found that the last instrument, executed in June, 1888, to be the last will and testament of deceased. Upon this finding, the court dismissed complainants' bill, and complainants appealed.

Numerous rulings of the court are assigned as error. Complainants contend that they should have been permitted to open and close the argument. In the case of *Watson v. Turner*, 89 Ala. 220, this court used the following language: "To establish a later will is necessarily to disestablish a former one already proved. The same is obviously true of a codicil, any of the provisions of which are inconsistent with those of the will itself. To prove a codicil is, *pro tanto*, to disprove so much of the probated will as it may revoke or modify. The distinction is one of extent, not of kind or quality. The attempt to set aside a probated will, therefore, by proving a later one or by attaching to it a codicil, with inconsistent provisions, is a contest of the validity of the former will." To the same effect is the decision in the case of *Hardy v. Hardy*, 26 Ala. 524. Other authorities might be cited. The uniform ruling of this court has been that when the probate of a will is contested in the chancery court, under section 2000 of the Code, those who claim under the probated will must show affirmatively its validity, and become the actors. In this State the chancery court has no jurisdiction to probate a will. The jurisdiction is conferred exclusively on the prebate court. When the jurisdiction of the probate court has attached, its decree, declaring the validity of the will and admitting it to probate, is conclusive on all the world, until reversed, or unless the probate is contested in the manner and within the time prescribed by statute. The complainants had the right under the statute to contest the validity of the will, and when they showed by their bill the revocation of the will probated, and their interest as devisees and distributees by a subsequent will, the burden was placed upon the respondents to affirm and maintain the validity of the probated will.

[McCutchen v. Loggins.]

Complainants have no standing in the chancery court except as contestants. The ruling of the court was in harmony with the previous decisions of this court.— *Johnston v. Glasscock*, 2 Ala. 218 ; *Kumpe & Wife v. Coons*, 63 Ala. 448 ; *Knox v. Paull*, 95 Ala. 505 ; *Hill v. Barge*, 12 Ala. 687 ; *Lyons v. Campbell*, 88 Ala. 462 ; *Matthews v. Forniss*, 91 Ala. 157.

Either party had the right to demand a jury, and the issue having been determined by the jury, its verdict, if permitted to stand, must dominate the decree or judgment to follow.—*Hill v. Barge, supra* ; *Matthews v. Forniss, supra*.

The court overruled a motion for a new trial, and in this conclusion we concur. There can be no doubt that the will probated was properly executed, and, at the time it was signed by testatrix, expressed her real desire as to the disposition of her property. The circumstances detailed of the discovery and preservation of the instrument denominated the second will, though not impossible in their nature, partake much more of the purely fortuitous or the romantic tban the probable, and we do not think a court would be justified in setting aside the verdict of a jury which rejected it as wanting in credibility ; nor are we prepared to hold that the evidence of the making of the last instrument, denominated the third will, is calculated to impress the mind with satisfactory conviction of its truth. This, however, was a question of fact for the jury, and they by their verdict determined that it was the genuine last will and testament of the testatrix. This will contains the following clause : ''hereby revoking all other wills or any instrument of writing that may be brought forth after my death, except the one I made to my said husband, W. J. Loggins, which John Guyer and Geo. M. D. McClutchen are witnesses to.'' The instrument here referred to was the one probated, in which the property is disposed of in the same manner as in the last instrument. Looking at all the evidence, we would not be justified in disturbing a verdict which determined the issue in favor of the respondent Loggins.

The objection that the judge entered the jury room while the jury were deliberating, in view of the facts, is frivolous. The further argument that, as the chancery court has no jurisdiction to probate the third will, the

verdict of the jury finding this to be the last will and testament of deceased did not authorize the rendition of any decree, is without merit. Complainant can have no standing in court except upon establishing the second instrument as a last will and testament. The verdict of the jury was adverse to complainants upon this issue. It is of no concern to complainants whether the first or last will be probated, or whether any will be probated, if it be true that the instrument under which they claim is not a valid and last will and testiment and unrevoked. Much of the testimony in the cause which would have been relevant to the relief sought by the bill, had complainants maintained the grounds of contest, by establishing the second will as a valid and subsisting will at the time of the death of testatrix, was irrelevant and immaterial to the issue before the jury.

There was no evidence of undue influence or fraud to procure the execution of either of the three instruments by Malinda Loggins, nor was her testamentary capacity questioned. The evidence establishing the legal execution of the first will was unimpeached. The issue as to the second instrument was, first, that it was a forgery, and, second, that, if genuine, it was revoked by a third will. As to the third will, complainants' contention was that it was purely and simply a forgery and fraud. The witnesses to the second will were both dead, and its due execution and validity were sought to be maintained by proof of handwriting. Both witnesses to the third will were living, and were examined on the trial.

Upon a statement of the issues properly before the jury it is apparent that a great many of the assignments of error, as well as principles of law invoked by appellant, have no application or relevancy. The assignments of error are more than a hundred. The record itself contains over four hundred pages. It was filed before the adoption of the rule which requires that an abstract be furnished to the court. Many assignments of error do not refer to the pages of the voluminous record, and in no instance does the otherwise carefully prepared and elaborate brief of appellant aid the court by a reference to the page of the record, where the point discussed might be found. We have tried to consider principles of law applicable to the case, and if any are overlooked,

[McCutchen v. Loggins.]

counsel for appellant must attribute the omission to the character of the record and assignment of errors.

A court does not err in sustaining an objection to a question to a witness, proposed to be examined as an expert, to state in the first instance whether he has had sufficient skill and experience to give an opinion. The witness should be required to state the facts, and it is then for the court to determine whether he is competent as an expert.

In impeaching a witness, it is not competent to ask the impeaching witness if he knows the general character of the witness "for truth and veracity, and honesty and integrity," or was he not a "common thief." In many of our earlier decisions the enquiry was confined to "general character for truth and veracity." The later decisions, and the sounder rule, has extended the inquiry to "general character" generally. "Integrity and honesty" enter largely as elements of good character, but the rule has not been relaxed or extended to inquiries into specific constituents of character, other than for truth and veracity, when the character of the witness for credibility is assailed. It would not be safe to enlarge the scope of inquiry further, lest we have the moral habits of the witness inquired into, and also his regard for and observance of religious orthodoxy. No doubt, on cross-examination, the impeaching witness could be questioned as to the source and extent of his knowledge of general character. The court did not err in sustaining an objection to these questions.—*Davenport v. State*, 85 Ala. 336; *McInerny v. Irwin*, 90 Ala. 275; *Birmingham R'y Co v. Hall*, 90 Ala. 8; *Rhea v. State*, 100 Ala. 119. There is no error in sustaining an objection to a question so framed as to elicit both competent and incompetent evidence.

The testimony of the witness that Mrs. Loggins "seemed hurt at the conduct of her husband," and "seemed to wish her property to go to her brother and his children," was incompetent and irrelevant to the issue.

We are not sure that we understand what the witness meant by stating that the instrument "was written as copied, for the purpose of imitation of another." We are not able to say the court erred in excluding this statement.

A motion to suppress the deposition of James Wilson

was overruled, and this ruling is assigned as error. The ground of the motion to suppress the deposition is that in the application for his oral examination the name of the witness was stated to be James H. Wilson, and the commission issued authorized the examination of James H. Wilson, when the true name of the witness was James Wilson. The witness was examined under the statute which authorizes the oral examination of certain witnesses in chancery cases. On his *voir dire* examination the witness stated that there was no "H" in his name, that his entire name was James Wilson; and upon this statement the complainants objected to his examination, and when the case was called for trial moved to suppress the deposition. The application for the oral examination of this witness is not set out in the record, nor is the commission. We cannot say that the application did not so describe the witness as to his residence, and in other respects, as to leave no donbt as the identity of the witness intended to be examined, or that complainants were misled. We are of the further opinion that when a witness is examined orally, under the statute, the same strictness is not necessary as when examined by interrogatories. The examination is more in the nature of an examination in court, except that the commissioner has no authority to pass upon objections and exceptions, further than to note them for the consideration of the court. It seems that notice of the time and place of the examination had been given. Counsel for both parties were present. Complainants' counsel had full opportunity to hear the questions propounded to the witness, and the answers, and to cross-examine the witness, a privilege he availed himself of, without "let or hindrance." The court did not err in overruling the motion. We would not be understood as holding that the mistake of inserting the initial "H" was fatal, had the witness been examined by interrogatories. We make no ruling on this point.—*Parsons v. Boyd,* 20 Ala. 112; *Strayer v. Wilson,* 54 Iowa, 565; *Kent v. Beach,* 45 *Vt.* 18; 5 Am. & Eng. Encyc. of Law, 616; *East v. Pace,* 57 Ala. 521.

It is insisted that some of the charges given are erroneous and objectionable, in that they are abstract, or single out, and give undue prominence to, certain parts of the evidence. This court does not always reverse a case

[Hart v. Adler.]

for the giving of charges which might have been prop-
erly refused.   In the case of *Schaungut, Admr. v. Udell,*
93 Ala. 302, it is held that the judgment will not be re-
versed because of argumentative, involved, or mislead-
ing charges, which assert correct propositions of law;
that in such cases additional instructions should be asked.
And in *Steed v. Knowles,* 97 Ala. 573, 581, it is said, "A
charge argumentative or misleading should be refused,
but if given, and it asserts a correct proposition of law,
and not entirely abstract, and its misleading tendencies
might have been remedied by an explanatory charge,
the giving of it will not work a reversal."   An instruc-
tion singling out the testimony of a witness and giving
undue prominence to it may be refused.—*Ala. Gr. So.
R. R. Co. v. Hill,* 93 Ala. 514; *E. T. V. & G. R. R. Co.
v. Deaver,* 79 Ala. 216; *Wadsworth v. Williams,* 101 Ala.
264; *Steed v. Knowles, supra.* Giving an abstract charge
is no ground for reversal, unless injury be shown.—*Payne
v. Crawford,* 97 Ala. 604.   Error cannot be predicated
on the refusal of an instruction which is purely abstract.
*Wadsworth v. Williams, supra.* All these decisions are
consistent with each other, and rest upon the principle
that the trial court will not be reversed unless error is
affirmatively shown, or unless it is manifest that a correct
principle of law was wrongly applied in the particular
case, to the injury of the party excepting.   When tested
by these principles, we find no errors in the charges
given or refused.

   Affirmed.